IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DWIGHT DAVID CORMIER,           §
                                §
          *Petitioner*,         §
                                §
v.                              §        CIVIL ACTION NO. H-06-0065
                                §
NATHANIEL QUARTERMAN,           §
                                §
          *Respondent*.         §

## MEMORANDUM OPINION AND ORDER

Dwight David Cormier, a state inmate proceeding *pro se*, seeks habeas corpus relief under 28 U.S.C. § 2254 challenging his state felony conviction. Respondent filed a motion for summary judgment (Docket Entry No. 31), to which petitioner responded (Docket Entries No. 32, 33).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court will grant the motion for summary judgment and dismiss this case for the reasons that follow.

### I. Procedural Background and Claims

Petitioner was convicted of the felony offense of possession of more than four but less than 200 grams of cocaine in Harris County, Texas, and sentenced to sixty years incarceration. The state court of appeals affirmed the conviction. *Cormier v. State*, No. 01-02-0256-CR, 2003 WL 21197156 (Tex. App. – Houston [1st Dist.] 2003, pet. ref'd) (not

designated for publication).  The Texas Court of Criminal Appeals refused discretionary review and denied habeas relief.  *Ex parte Cormier*, Application No. 60,683-01, at 2.

Petitioner alleges thirty-three or more multifarious habeas grounds in the instant petition.  The Court has grouped and renumbered these grounds for clarity and convenience, as follows:

(1)    void conviction;

(2)    denial of trial counsel;

(3)    denial of right to self-representation on appeal;

(4)    improper reinstatement of appeal;

(5)    omissions in or fabrications of

       (a)    clerk's and reporter's record;

       (b)    hospital records;

       (c)    various court documents;

       (d)    petitioner's identity;

(6)    denial of jury's requests for evidence;

(7)    involuntary response to enhancement paragraphs;

(8)    "illegal seizures" of evidence;

(9)    illegal arrest;

(10)   lack of access to defense witnesses;

(11)   broken chain of custody;

(12)    prosecutor's illegal possession of hospital records;

(13)    *Brady* violations; and

(14)    ineffective assistance of appellate counsel.

Respondent seeks summary judgment on all of these claims.

## II.   Statement of Facts

The state court of appeals set forth the following statement of facts in its opinion:

Appellant was involved in a head-on automobile collision requiring him to be transported to Memorial-Hermann Hospital by Life-Flight.  Appellant was conscious but dazed and confused.  [He] was only known and identified by his Life-Flight identification, 'ECHO 439, Male,' because the police officer who responded to the scene of the accident removed appellant's identification. Appellant was placed on a backboard, and his clothes were cut free to the groin in transit from the accident scene, but they were not removed.  At the hospital, a nurse placed a Foley Catheter in appellant's penis.  A doctor performed a rectal tone examination on appellant.  Later when a different nurse removed appellant's underwear, a sock containing cocaine in the shape and size of a tennis ball was found behind [his] scrotum.

*Cormier*, 2003 WL 21197156, *1.

## III.   Applicable Legal Standards

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28

3

U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

4

## IV.   Void Conviction

Petitioner claims that he removed his state criminal case to federal court in *Cormier v. State of Texas*, C.A. No. H-02-2676 (S.D. Tex.), depriving the state trial court of jurisdiction to enter judgment and sentencing.  His claim is meritless.  The federal district court dismissed petitioner's purported removal petition shortly after it was filed, noting that petitioner had failed to comply with the applicable law.  Because the case had not been "removed," the district court saw no need to formally remand it to state court.  *Cormier*, Docket Entry No. 4.  Accordingly, the trial court was not without jurisdiction to enter judgment and sentencing against petitioner.

The state habeas court denied relief on this issue and found that, "The applicant fails to allege sufficient facts which, if true, would entitled him to relief on any of his remaining twenty-two claims." *Ex parte Cormier*, p. 271 (citation omitted).  Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of federal law, or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## V.   Denial of Trial Counsel

Petitioner asserts that he never waived his right to counsel and was forced to represent himself at trial. The record disproves his assertion.

5

After petitioner informed the trial court of his decision to represent himself at trial, the court held the required hearing under *Faretta v. California*, 422 U.S. 806 (1975).  The trial court advised petitioner of his constitutional rights, warned him of the dangers and potential consequences of self-representation, and questioned him at length as to his desire and ability to represent himself.  S.F. Vol. 2, pp. 5-22.  Petitioner waived his right to counsel throughout the hearing and consistently stated he wished to represent himself.  In answer to the trial court's question, "So, you waive the right to have court-appointed counsel; is that correct?" petitioner stated, "Yes, ma'am, I do."  *Id*., p. 13.  In answer to the trial court's question, "And are you knowingly, voluntarily, and intentionally giving up your right to have a lawyer?" petitioner stated, "Yes, ma'am."  *Id*., p. 17.  In answer to the trial court's question, "Knowing that you are untrained without prior legal experience and not familiar with the Rules of Evidence and Procedures to the extent a lawyer would be, do you waive your right to effective assistance of counsel?" petitioner stated, "Yes, ma'am, I do."  *Id*., p. 20. Petitioner signed the written waiver of court-appointed counsel, and subsequently represented himself at trial.  *Id*., p. 22.

Petitioner's claim that he never waived his right to trial counsel is refuted by the record, and his request for habeas relief on the issue is denied.  To the extent he complains that there was a conflict of interest between himself and the attorney appointed to represent him, any conflict was rendered moot by petitioner's successful request to dismiss counsel and represent himself.

The state habeas court denied relief on this issue and found that, "The applicant fails to allege sufficient facts which, if true, would entitled him to relief on any of his remaining twenty-two claims." *Ex parte Cormier*, p. 271 (citation omitted). Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of federal law, or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## VI. Denial of Right to Self-Representation on Appeal

In a change of tack from his argument above, petitioner complains that the state courts forced him to accept representation by court-appointed counsel on appeal, denying him his right to proceed *pro se* on appeal. In a separate appeal of the issue, the state appellate court disagreed with petitioner and held as follows:

> We first consider whether a criminal appellant has a right to appellate self-representation. We conclude that there is no such right.
>
> The United States Supreme Court addressed the question of whether there is a federal constitutional right to self-representation on direct appeal from a criminal conviction in *Martinez v. Court of Appeal of California*, 528 U.S. 152 (2000). The court examined its reasoning and holding in *Faretta v. California*, 422 U.S. 806 (1975), and concluded that the constitutional right to represent oneself does not extend to the appellate process under either the Sixth Amendment or the Due Process Clause. The court observed that its holding does not preclude the states from recognizing a right to appellate self-representation under their own constitutions. *Martinez*, 528 U.S. at 163. On the other hand, the court held that the states are clearly within their discretion to conclude that the government's interests in the fair and efficient

7

administration of justice outweigh an invasion of the appellant's interest in
self-representation.

*Cormier v. State*, 85 S.W.3d 496, 497-98 (Tex. App. – Houston [1st Dist.] 2002, no pet.)
(citations edited). The state court concluded that petitioner had no right of self-representation
under either the federal or state constitution. Other state appellate courts disagreed with the
Houston court's reasoning, but only as a question of state law. *See*, *e.g.*, *Sickles v. State*, 170
S.W.3d 298, 299 (Tex. App.– Waco 2005, order); *Martinez v. State*, 163 S.W.3d 88 (Tex.
App. – Amarillo 2004, order). Petitioner fails to show that he enjoyed a federal
constitutional right to represent himself in the appeal of his criminal conviction.

The state court's determination denying this claim is not in conflict with established
federal law and is not objectively unreasonable, and petitioner fails to rebut the presumption
of factual correctness with clear and convincing evidence. Respondent is entitled to summary
judgment on this claim.

### VII.  Improper Reinstatement of Appeal

As a collateral issue to his preceding arguments, petitioner complains that his appeal
was improperly reinstated following the trial court's second *Faretta* hearing. The record
reveals that on June 6, 2002, the state court of appeals abated petitioner's criminal appeal and
instructed the trial court to conduct a hearing and enter findings on petitioner's request to
represent himself on appeal. In compliance with the order, the trial court held a hearing and
found that self-representation was not in petitioner's best interest. Petitioner appealed the

8

finding. *Cormier*, 85 S.W3d at 497.  As noted above, the state appellate court subsequently determined that petitioner had no state or federal constitutional right to represent himself on appeal, and reinstated the appeal with court-appointed counsel.  *Id*.

Petitioner complains that the abatement order required the court coordinator to give notice and set a hearing prior to reinstating the appeal.  Even assuming petitioner's complaint were to state a cognizable habeas claim, it has no factual basis in the record.  The order provided that, "The appeal will be reinstated on this Court's active docket when the trial court's findings and recommendations are filed with this Court."  Supp. C.R. at 3.  The state appellate court did exactly that, and no reinstatement hearing was required under the terms of its own order.

The state habeas court denied relief on this issue and found that, "The applicant fails to allege sufficient facts which, if true, would entitled him to relief on any of his remaining twenty-two claims."  *Ex parte Cormier*, p. 271 (citation omitted).  Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of federal law, or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

### VIII.   Omissions and Fabrications

Petitioner raises numerous allegations of omissions and fabrications in the documents and records regarding his criminal case.  These claims are specious, as shown below.

9

*Clerk's and Reporter's Record*

Petitioner claims that the reporter's record is fabricated because the favorable testimony of his mother, Thelma Fielder, his aunt, Doris Chappel, and a state trooper, Donald Smith, were omitted from the reporter's record. (Docket Entry No. 11, pp. 33-34.) A simple review of the record reveals the contrary. Ms. Fielder's testimony appears in Volume 12 of the reporter's record at pages 21 through 52 and 60 to 61; Ms. Chappel's testimony appears in Volume 12 at pages 62 through 67; and the testimony of Donald Smith appears in Volume 11 at pages 18 through 30.

Petitioner claims further that a "Cynthia J. Lee" fabricated Volumes 1 through 8 of the reporter's record because "[t]he official court reporter for the 184th District Court of Harris County, Texas is Cynthia Lee without a middle initial J." (Docket Entry No. 11, p. 20). He also complains that two or more different court reporters recorded the trial proceedings. (Docket Entry No. 32, p. 34.) Petitioner claims that the clerk's record is fabricated because the state courts sent him notice of two different filing dates for the clerk's record. (*Id*., p. 21.) The state habeas court denied relief on these issues and found that, "The applicant fails to allege sufficient facts which, if true, would entitled him to relief on any of his remaining twenty-two claims." *Ex parte Cormier*, p. 271 (citation omitted).

Petitioner presents no probative evidence of any omissions in or fabrications of the reporter's or clerk's record, and his conclusory allegations are insufficient to preclude summary judgment. Petitioner fails to show that the state court's determinations were

10

contrary to or involved an unreasonable application of federal law, or were unreasonable determinations of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on these issues.

*Hospital Records*

Petitioner complains that the hospital records produced at trial are fabricated.  As "proof," he points to discrepancies between a date in the records and the testimony of his mother and aunt regarding what day they identified him and authorized his surgery. According to petitioner, the records report that his family identified him and authorized surgery on April 10, 2001; at trial, his mother and aunt initially disagreed with one another as to the date, but subsequently testified that those events occurred on April 14, 2001.

The state habeas court denied relief on this issue and found that, "The applicant fails to allege sufficient facts which, if true, would entitled him to relief on any of his remaining twenty-two claims." *Ex parte Cormier*, p. 271 (citation omitted).  Petitioner fails to establish, and the record does not reveal, any violation of his constitutional rights regarding the authenticity of his hospital records.  No probative evidence supports petitioner's claims of fabrication.

The state court's determination of this claim is not in conflict with established federal law and is not objectively unreasonable, and petitioner fails to rebut the presumption of factual correctness with clear and convincing evidence.  Respondent is entitled to summary judgment on this claim.

*Court Documents and the Identity of Petitioner*

Petitioner complains throughout his petition that various court documents are obvious fabrications because he was not yet identified at the time criminal proceedings were initiated against him.  (Docket Entry No. 11, pp. 17-20, 23-24.)  In support, petitioner relies on discrepancies in the record regarding the discovery and possession of his wallet by police following the accident, the date his mother and aunt identified him in the hospital, and dates appearing in his medical records.   He further notes that prison records reflect a "Dwight David Cormier" from Beaumont, Texas, incarcerated  under the name "Dwight Cormier," while his criminal documents in the instant case reflect a "Dwight Cormier" of Magnolia, Texas.  (Docket Entry No. 11, p. 23.)  In short, petitioner claims that the State fabricated his identity for purposes of this conviction.

The purported constitutional grounds for these claims are far from clear.  A challenge to the factual sufficiency of the identity evidence based on discrepancies in the record would not be a cognizable ground for federal habeas relief.  *See Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993) (holding that factual sufficiency of the evidence cannot be challenged on federal habeas).  A complaint raising illegal search or seizure under the Fourth Amendment would be barred in this case under *Stone v. Powell*, 428 U.S. 465 (1976).

A challenge to the legal sufficiency of the evidence to support petitioner's identity (and hence his criminal proceedings) would fall under *Jackson v. Virginia*, 443 U.S. 307, 317-18 (1979), requiring him to prove that after reviewing the evidence in the light most

favorable to the State, no rational trier of fact could have found the essential elements of the

offense, including petitioner's identity.  The state appellate court found the evidence legally

sufficient to support petitioner's conviction, including the issue of his identity:

> T]he nurses began to remove his clothes. At this time, appellant made a furtive
> gesture by 'grabb[ing] his privates' when the nurses went to remove his
> underwear. After assuring him that he need not be embarrassed, the nurses
> removed his underwear. They then rolled appellant on his side to examine his
> back for injuries not previously found because of the backboard. A sock the
> size and shape of a 'tennis ball' fell from behind appellant's scrotum. Inside the
> sock was a hard substance, later determined to be cocaine.
>
> *     *     *     *
>
> [A]ppellant points to the fact that the nurses from Memorial-Hermann Hospital
> could not identify him at trial as 'ECHO, 439, Male.' It is understandable that
> a nurse might not be able to identify a patient after a two-year lapse, because
> as one of the Memorial-Hermann nurses noted, a person looks different when
> he is suffering from severe injuries, is swollen, and has a breathing tube. At the
> time of the incident, the nurse who found the cocaine identified appellant as
> the person with the sock, and she does not feel that she pointed to the wrong
> patient. In addition the officer at the scene of the accident identified appellant;
> the life-flight nurse identified appellant; and the Memorial-Hermann
> security/police officer identified appellant.

*Cormier*, at *4.  The above facts as well as an independent review of the record reveals

legally sufficient evidence to support petitioner's identity and the conviction.  Petitioner fails

to establish the fabrication of any court documents regarding his criminal conviction or

identity.

   Petitioner fails to show that the state court's determinations were contrary to or

involved an unreasonable application of federal law, or were unreasonable determinations

of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

*County and Court Criminal Records*

Petitioner argues that the judgments in his prior convictions were "canceled" by the state and federal government.  (Docket Entry No. 11, p. 38.)  In support, he directs this Court to copies of a release of judgment lien and satisfaction of judgment in *United States v. Cormier*, C.A. No. B-83-662-CA (E.D. Tex. 1988).  *Ex parte Cormier*, pp. 208-09.  The release of judgment lien evinces petitioner's payment of a judgment to the United States of America in a principal amount of $355.29.  These documents appear to reflect a civil matter, not a criminal conviction, and no relationship is established between the documents and petitioner's enhancement paragraphs.  S.F. Vol. 13, p. 5.  Petitioner did not object at trial to the enhancement paragraphs on the basis of these documents.

Petitioner further claims he was granted "clemency" under state law and directs this Court to Exhibit J in his state habeas application.  *Ex parte Cormier*, p. 212.  Exhibit J is petitioner's certificate of release to parole dated December 28, 1993, not an order of clemency.  Petitioner shows no factual support for his claim of clemency.

Petitioner additionally complains that the enhancement paragraphs were illegal because the State never introduced any evidence of these prior convictions.  His assertion is incorrect.  The record shows that during the punishment phase of trial, the State proved up,

14

and the trial court admitted into evidence, petitioner's "pen packets" for the prior convictions.  S.F. Vol. 13, pp. 13-17.

The state habeas court denied relief on these issues and found that, "The applicant fails to allege sufficient facts which, if true, would entitled him to relief on any of his remaining twenty-two claims."  *Ex parte Cormier*, p. 271 (citation omitted).  Petitioner fails to establish, and the record does not reveal, any violation of his constitutional rights regarding these issues.

The state court's determinations of these claims are not in conflict with established federal law and are not objectively unreasonable, and petitioner fails to rebut the presumption of factual correctness with clear and convincing evidence.   Respondent is entitled to summary judgment on these issues.

## IX.   Procedurally Defaulted Claims

Petitioner complains that during its deliberations, the jury requested to review a witness's answer to a certain question posed by the State.  The trial court reviewed the testimony and denied the request because the State had not asked that particular question. Petitioner acknowledges that he, not the prosecutor, asked the relevant question.  Petitioner further complains that the trial court made an inappropriate comment to the jury, misinterpreted his prior convictions for enhancement purposes and entered an involuntary plea of "no contest" for him, and that the court reporter refused to read back certain testimony to the jury.

None of these issues was raised on direct appeal.  In denying habeas relief, the state

court made the following finding:

> Because the applicant failed to raise on direct appeal his instant challenges to
> the trial court's communication with the jury, his plea to an enhancement
> paragraph as interpreted by the court, and the court reporter's actions, the
> applicant is procedurally barred from raising the claim in the instant
> proceeding.

*Ex parte Cormier*, p. 270.

Procedural default exists where a state court clearly and expressly bases its dismissal

of a claim on a state procedural rule, and that procedural rule provides an independent and

adequate ground for the dismissal.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The consequence of procedural default is that the petitioner forfeits his federal habeas claim.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  The Fifth Circuit recognizes that a finding

by a state court that a criminal defendant failed to comply with applicable state procedural

rules, such as the Texas contemporaneous objection rule, is an independent and adequate

basis for a federal habeas court's refusal to address the merits of a claim for federal habeas

corpus relief.  *See Rowell v. Dretke*, 398 F.3d 370, 375-75 (5th Cir. 2005); *Graves v.

Cockrell*, 351 F.3d 143, 152 (5th Cir. 2004).  In the instant case, the state habeas court

expressly stated that petitioner's claims were procedurally barred because he did not raise

them on direct appeal.  *See Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004).

When the last state court to write a reasoned opinion rests its decision on a claim for

relief on state procedural grounds, a petitioner can still obtain federal habeas review of that

same claim only if he can show cause and actual prejudice for his procedural default or that a failure to address the merits of the federal claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *see also Haley v. Cockrell*, 306 F.3d 257, 263 (5th Cir. 2002). Petitioner fails to present probative evidence of a fundamental miscarriage of justice or of circumstances excusing his procedural default. Respondent is entitled to summary judgment on the procedurally defaulted issues.

## X. "Illegal Seizures" of Evidence

Petitioner purports to claim that certain evidence was illegally seized; a closer review of his arguments reveals complaints of a different nature.

Petitioner alleges that on November 26, 2002, the prosecutor and a police officer showed petitioner the purported cocaine evidence in a back room of the courtroom. According to petitioner, they had no cocaine to present to the jury and hoped he would touch the evidence so it would have his fingerprints on it for trial. (Docket Entry No. 11, p. 13.) Petitioner asserts this as affirmative proof of "evidence tampering and commingling." (*Id*.) To the extent this issue was presented to the state court on collateral review, it was denied. Petitioner's allegations are wholly conclusory, unsupported by any probative evidence in the record, and insufficient to raise a genuine issue of material fact precluding summary judgment.

He further complains that the State brought an object into the courtroom in the jury's presence and introduced it into evidence while he was in the holding tank. His descriptions

17

of this object vary from "a large cardboard box with a lid" (Docket Entry No. 11, p. 14), to "a box full of drugs" (*id.*), to "a large plastic bag (2) on the table with something white in them with red tape holding the bags together," *Ex parte Cormier*, p. 164.  In support, petitioner relies on affidavits submitted to the state habeas court by his mother and aunt, stating that the prosecutor put plastic bags on the table and told the jurors "to look at this crack cocaine."  *Id.*  Nothing in the court reporter's record supports the occurrence of this incident.  To the contrary, the trial court made clear that no such event happened:

> PETITIONER: [A]lso, I'm aware that [the State] introduced evidence while I was held in the back room, also.  I'm aware of that.
>
> THE COURT: So the record is clear, there was no evidence introduced in your trial while you weren't here. That never happened.
>
> PETITIONER: Your Honor?
>
> THE COURT: Yes?
>
> PETITIONER: I have sworn affidavits pertaining to the fact that witnesses did observe [the prosecutor] introduce this evidence into trial court.
>
> THE COURT: What judge was that because it wasn't me?  What judge was that?
>
> PETITIONER: I'm not going to get into that right now, your Honor.

S.F., Hearing on Order of Abatement, pp. 10-11.  In denying relief on this claim, the state habeas court impliedly found the affidavits not credible.  Petitioner fails to present clear and convincing evidence rebutting the presumed correctness of the trial court's findings.

Petitioner also alleges that his prior trial attorney illegally seized his hospital records because he never consented in writing to release the records.  (Docket Entry No. 11, p. 15.) The state court record shows that on November 8, 2002, after petitioner was allowed to proceed *pro se* for trial, the trial court held a hearing for counsel to turn over his defense materials to petitioner.  The items included a set of petitioner's hospital records obtained by defense counsel during his representation of petitioner.  Although petitioner complained to the court that he never authorized counsel to obtain his records, S.F. Vol. 3, p. 7, he subsequently introduced these records into evidence at trial.  The state habeas court denied relief on this issue and found that, "The applicant fails to allege sufficient facts which, if true, would entitled him to relief on any of his remaining twenty-two claims."  *Ex parte Cormier*, p. 271 (citation omitted).  Petitioner fails to establish, and the record does not reveal, that counsel violated petitioner's constitutional rights by obtaining his hospital records for trial.

Petitioner also asserts that his fingerprints were illegally seized during the punishment phase of trial.  (Docket Entry No. 16.)  He complains that the State's fingerprint expert fingerprinted him prior to trial and matched it to fingerprints appearing in documents for his prior convictions.  The record shows that the witness placed petitioner's fingerprints on a print card prior to trial, then compared them to those appearing in petitioner's pen packet.

19

S.F. Vol. 13, pp. 13-15.  Petitioner raised a general objection to the remoteness and unconstitutionality of the prior convictions, but not to the fingerprinting identification procedure itself.

The state habeas court denied relief on this issue and found that, "The applicant fails to allege sufficient facts which, if true, would entitled him to relief on any of his remaining twenty-two claims." *Ex parte Cormier*, p. 271 (citation omitted).  Petitioner fails to establish, and the record does not reveal, any violation of his federal constitutional rights regarding his fingerprinting.

The state court's determinations of these claims are not in conflict with established federal law and are not objectively unreasonable, and petitioner fails to rebut the presumption of factual correctness with clear and convincing evidence. Respondent is entitled to summary judgment on these claims.

## XI.  Illegal Arrest

Given a liberal construction of his pleadings, petitioner appears to argue that he was arrested without a warrant or probable cause in violation of his Fourth Amendment rights. Fourth Amendment violations are generally not cognizable on federal habeas unless a petitioner establishes that the State failed to provide him an opportunity for full and fair litigation of the Fourth Amendment claim.  *Stone v. Powell*, 428 U.S. 465, 482 (1965).  No such failure is raised or appears in the instant record, and any Fourth Amendment complaints raised by petitioner will not be considered.

## XII.  Lack of Access to Defense Witnesses

*Dr. James H. " Red" Duke*

Petitioner argues that he was denied his Sixth Amendment rights when he was prevented from calling Dr. James H. "Red" Duke as a material witnesses in his defense.  The state court rejected this claim on direct appeal, as follows:

> This point of error ultimately comes down to a series of procedural mistakes made by appellant, which resulted in the trial court's not having authority to compel Dr. Duke to appear and testify.
>
> *       *       *       *
>
> Appellant did not effectuate service in compliance [with] article 24.04 of the Code of Criminal Procedure.  Instead, he attempted to serve Dr. Duke by mailing the subpoena by United States mail.  When it became apparent that there was no evidence that Dr. Duke had received the subpoena, the trial judge recessed for a day to allow appellant to complete the paperwork so that proper service on Dr. Duke could be completed.  Appellant decided instead to take 'a day of rest.'  Despite the attempts of the trial court to help [him], appellant failed to avail himself of the benefit.  Only when a witness has been properly subpoenaed and the witness fails to appear can the trial judge compel the presence of an absent witness by issuing a writ of attachment for the witness.  As a result of appellant's failure to effectuate proper service, the trial court did not have authority to compel the presence of Dr. Duke.

*Cormier*, at *1-3 (citations omitted).  The state court's findings and the record clearly show that petitioner was not prevented from calling Dr. Duke; rather, he failed to take the proper procedural steps to compel Dr. Duke's attendance at trial.  To the extent petitioner complains that the trial and appellate courts misapplied state law, no cognizable habeas ground is presented.  Federal habeas relief is available to protect federal constitutional rights, not rights

existing solely under rules of state law and procedure.  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).

The trial court exhibited great care in providing petitioner a court-appointed investigator and sufficient time to procure his witnesses, but was under no legal obligation to insure petitioner took the necessary steps.  *See McKaskle v. Wiggins,* 465 U.S. 168, 183-184 (1984) (holding that a defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure); *Martinez*, 528 U.S. at 162 ("[T]he trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal 'chores' for the defendant that counsel would normally carry out."). Indeed, the trial court repeatedly informed petitioner of the proper procedures for procuring witnesses, but petitioner insisted on pursuing the matter his own way.

The state court's determination of petitioner's claim is not in conflict with established federal law and is not objectively unreasonable, and petitioner fails to rebut the presumption of factual correctness with clear and convincing evidence.   Respondent is entitled to summary judgment on this claim.

*Dr. Emanuel Melissinos*

Petitioner argues that the trial court erred in sustaining the State's motion to quash his trial subpoena of Dr. Emanuel Melissinos.  This claim was rejected by the state court on direct appeal, which ruled as follows:

22

Appellant sought to introduce evidence that Dr. Melissinos made a note about cocaine found on appellant on April 14, 2000, when Dr. Melissinos operated on appellant's leg and ankle.  The issue presented in a pre-trial hearing dealt with two documents in appellant's medical record.  One document refers to the surgery on April 14, 2000, and the second reflects that the contraband was found on a date that could be construed as either April 10, or April 14, 2000. Appellant contends that the second document reflects that the narcotics were found on April 14, and that this proves that no contraband was found on [him] on April 10, 2000.  Dr. Melissinos, however, testified that the two documents were not related to each other and that he did not write the second  document referring to the contraband.  Furthermore, Dr. Melissinos testified that he was not present in the Emergency Room (ER) on April 10, 2000.  At the end of its case in chief, the State again moved to quash the subpoena and testimony of Dr. Melissinos.  The trial court granted the motion at that time.

Appellant has the burden to show that the witness' [sic] testimony would have been both material and favorable to his defense.  Furthermore, it is necessary to provide sworn evidence or agreed facts regarding the materiality and favorableness of a witness's testimony.   During a pre-trial hearing, Dr. Melissinos told the trial court that he could not provide information on the matter, and that it was of no use to call him as a witness because he was not present in the ER.  Because of the absence of any sworn evidence or agreed facts regarding the materiality and favorableness of Dr. Melissinos' testimony, the trial court did not abuse its discretion in granting the State's motion to quash the subpoena of Dr. Melissinos.

*Cormier*, at *3 (citations omitted).

An independent review of the record finds no fault with the state court's factual and legal analysis.  The state court's determination of petitioner's claim is not in conflict with established federal law and is not objectively unreasonable, and petitioner fails to rebut the presumption of factual correctness with clear and convincing evidence. Respondent is entitled to summary judgment on this claim.

23

*Julie Grub*

Petitioner complains that the hospital custodian of records, Julie Grub, failed to comply with his subpoena duces tecum to produce petitioner's original life flight records for trial. (Docket Entry No. 30.) The record shows that Ms. Grub appeared in court, produced what she believed were the requested records, and was examined by petitioner and the State. S.F. Vol. 12, pp. 53-59. Petitioner objected that Ms. Grub had not produced all of his life flight, emergency room, consent, and hospital discharge documents. In response, the trial court advised him that he would have to establish any omissions in the record. *Id.*, p. 56. Petitioner did not do so, and released Ms. Grub as a witness. *Id.*, p. 59. Petitioner presents no probative evidence of any omitted records or their materiality to his defense.

The state habeas court denied relief on this issue and found that, "The applicant fails to allege sufficient facts which, if true, would entitled him to relief on any of his remaining twenty-two claims." *Ex parte Cormier*, p. 271 (citation omitted). Petitioner fails to establish, and the record does not reveal, any violation of his constitutional rights regarding Ms. Grub or the records she produced for trial.

The state court's determination of this claim is not in conflict with established federal law and is not objectively unreasonable, and petitioner fails to rebut the presumption of factual correctness with clear and convincing evidence. Respondent is entitled to summary judgment on this claim.

### XIII.   Broken Chain of Custody

Petitioner complains that on November 26, 2001, the State and a police officer appeared in court with the cocaine and allowed petitioner to examine it.  Petitioner argues that this broke the chain of custody for the cocaine, established it as "tampered with," and rendered it inadmissible at trial.

The trial court denied petitioner's objection to the chain of custody and his complaints of evidence tampering, as shown by the following:

THE COURT:      Are you offering evidence that this has been tampered with?  I'm giving you a hearing outside the presence of the jury as to whether or not the evidence has been tampered with.  Do you wish to offer any witnesses including yourself?

PETITIONER:      The only thing –

THE COURT:      That's a yes or no.   Are you going to offer any testimony?  Because right now, there's no evidence before the court that this has been tampered with.  Do you wish to offer any evidence?

PETITIONER:      The evidence that it was tampered with, your Honor, is that [the police officer] appeared in court with it, November 26th.

THE COURT:      Okay.  So that's the basis of your objection?

PETITIONER:      Yes, ma'am, that was a break in chain of custody.  If [the police officer] –

THE COURT:      I see.  When they came down here and showed you the evidence at your request, you are saying that was the break in the chain of custody?

25

*     *     *     *

PETITIONER:  That is the basis, the fact that [the police officer] placed this into the property room, he was not supposed to touch that until the day of trial.

THE COURT:  Thank you.  I understand your objection.  Thank you. That's overruled.

S.F. Vol. 11, pp. 152-53.

The state habeas court denied relief on this issue and found that, "The applicant fails to allege sufficient facts which, if true, would entitled him to relief on any of his remaining twenty-two claims." *Ex parte Cormier*, p. 271 (citation omitted).  Petitioner fails to establish, and the record does not reveal, any violation of his constitutional rights regarding this issue. Regardless, the Fifth Circuit recognizes that any break in the chain of custody of physical evidence goes to the weight of the evidence, not its admissibility.  *See*, *e.g.*, *United States v. Shaw*, 920 F.2d 1225, 1229-30 (5th Cir. 1991).

The state court's determination of this claim is not in conflict with established federal law and is not objectively unreasonable, and petitioner fails to rebut the presumption of factual correctness with clear and convincing evidence.  Respondent is entitled to summary judgment on this issue.

### XIV. Prosecutor's Illegal Possession of Hospital Records

Petitioner claims that the State obtained copies of his hospital records without his written consent, rendering the records "illegal" and inadmissible.  His complaint is two-fold:

26

that the State violated his constitutional rights by obtaining his hospital records without his authorization, and that the records were improperly admitted into evidence.

The record shows that the trial court overruled petitioner's objections and allowed the hospital records into evidence.  The record further shows that petitioner himself introduced the records into evidence, as well as subpoenaed and presented the hospital's records custodian at trial.  Petitioner offers no relevant legal authority to support his claim that the State's possession of his hospital records violated his federal constitutional or statutory rights.  Even assuming a constitutional violation, petitioner himself introduced his hospital records into evidence and no harm is alleged or shown.  *See Brecht v. Abrahamson*, 507 U.S. 619 (1993).

The state habeas court denied relief on this issue and found that, "The applicant fails to allege sufficient facts which, if true, would entitled him to relief on any of his remaining twenty-two claims." *Ex parte Cormier*, p. 271 (citation omitted).  Petitioner fails to establish, and the record does not reveal, any violation of his constitutional rights regarding this issue.

The state court's determination of this claim is not in conflict with established federal law and is not objectively unreasonable, and petitioner fails to rebut the presumption of factual correctness with clear and convincing evidence.  Respondent is entitled to summary judgment on this issue.

### XV. *Brady* Violations

Petitioner complains that the State violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963), by failing to produce a laboratory test, police offense report, or presentencing report, and by refusing to allow him to inspect the driver's license of hospital nurse Jacci LaWalker. (Docket Entry No. 11, p. 25.)  In rejecting these claims, the state habeas court found that, "The applicant fails to allege sufficient facts which, even if true, would demonstrate that the State withheld exculpatory evidence in the primary case."  *Ex parte Cormier*, p. 270 (citations omitted).

To establish a *Brady* violation, a petitioner must show that (1) the State suppressed evidence; (2) the evidence was favorable to the defense; (3) the evidence was material either to guilt or punishment; and that (4) the evidence was not discoverable by the defendant through due diligence.  Evidence is material only if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.  *United States v. Bagley*, 473 U.S. 677, 682 (1985).  The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of trial, does not establish materiality under this standard.  *United States v. Agurs*, 427 U.S. 97, 109-10 (1976).

In the instant case, petitioner presents no probative evidence that the laboratory test or offense report were favorable or material to his defense.  The State presented expert testimony identifying the substance found on his person as 108.9 grams of 52.5 percent pure

28

cocaine. S.F. Vol. 11, p. 156. Nothing in the record shows that the written laboratory test of the cocaine contained exculpatory evidence. The trial court informed petitioner that under state law, the offense report was exempt from discovery unless voluntarily produced by the State. S.F. Vol. 4, p. 5. Petitioner's former trial counsel gave him a written narrative of the offense report and a summary of facts from the offense record. S.F. Vol. 3, pp. 4-5. The trial court ordered the State to give petitioner an update of the report during trial. *Id.*, Vol. 12, pp. 68-69. Petitioner presents no probative evidence that the written offense report contained undisclosed exculpatory material evidence, or that a presentencing report was prepared.

At trial, petitioner questioned the identity of witness LaWalker. At petitioner's request, the trial court examined LaWalker's driver's license and verified for the record that it identified La Walker; at the State's request, the court did not tender the driver's license to petitioner. *Id.*, Vol. 7, p. 7. The court denied petitioner's request that LaWalker be fingerprinted during trial to prove her identity. *Id.*, Vol. 11, p. 106. Petitioner presents no probative evidence that his inspection of LaWalker's driver's license or her fingerprints would have provided exculpatory evidence material to his defense. Petitioner's conclusory allegations of *Brady* violations are unsupported in the record and insufficient to raise a genuine issue of material fact precluding summary judgment.

The state court's determinations rejecting petitioner's claims are not in conflict with *Brady* and are not objectively unreasonable, and petitioner fails to rebut the presumption of

factual correctness with clear and convincing evidence. Respondent is entitled to summary judgment on these claims.

## XVI.   Ineffective Assistance of Appellate Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to a *Strickland* claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned legal strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, mere error by counsel, even if

professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the proceeding unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts that, if proven, would show that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. *See Strickland*, 466 U.S. at 687-88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available nonfrivolous ground for appeal. *Evitts*, 469 U.S. at 394; *West*, 92 F.3d at 1396. Nor will counsel be deficient for failing to press a frivolous point. *Williamson*, 183 F.3d at 462. Rather, it means that counsel performs in a reasonably effective manner. *Evitts*, 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law

31

and make informed decisions as to whether avenues will, or will not, prove fruitful. *Strickland*, 466 U.S. at 690-91.

Petitioner complains that his court-appointed appellate counsel (1) failed to notify him when his conviction was affirmed, thus preventing petitioner from filing a timely *pro se* motion for rehearing; (2) filed a petition for discretionary review without his permission; (3) filed a frivolous brief on appeal; and (4) refused to withdraw during the appeal.  In denying habeas relief, the state court made the following relevant findings:

1.   The applicant fails to allege sufficient facts which, if true, would show that he was harmed due to counsel's alleged failure to notify him that his conviction was affirmed.

2.   The applicant fails to allege sufficient facts which, if true, would show that appellate counsel's brief was deficient.

4.   The applicant fails to demonstrate in all things that trial and appellate counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

*Ex parte Cormier*, pp. 269-70 (citations omitted).  These findings apply to the following deficiency arguments raised by petitioner.

*Frivolous brief on appeal*

Petitioner alleges that appellate counsel denied him effective representation by filing a frivolous appellate brief containing factual and legal errors.  As factual errors, petitioner complains that counsel stated petitioner had prior convictions and that a witness named "K.K.

32

Alexander" testified at trial.  (Docket Entry No. 11, p. 22.)  Counsel was not incorrect.  The record clearly shows that the jury found "true" to the enhancement paragraphs, and that Houston Police Department crime laboratory chemist K.K. Alexander testified for the State on February 18, 2002.  S.F. Vol. 11, pp. 146-172.

Further, petitioner fails to establish a viable legal issue that counsel should have raised on appeal; that is, that had counsel raised the issue, there is a reasonable probability that the result of his appeal would have been different.  His conclusory allegations of misstatements and omitted appellate errors are insufficient to raise a material issue of fact precluding summary judgement.  Petitioner show neither deficient performance nor prejudice under *Strickland*.

*Refusal to withdraw*

Petitioner claims that court-appointed appellate counsel was ineffective in refusing to withdraw after petitioner exercised his constitutional right to represent himself on appeal. As already determined by this Court, petitioner had no such federally-protected right. Further, the state appellate court determined that petitioner had no such right under state law. *Cormier*, 85 S.W.3d at 497-98.  Thus, neither deficient performance nor prejudice is shown.

*No notification of appeal status*

Petitioner alleges that because appellate counsel failed to inform him that his conviction was affirmed, he was unable to file a *pro se* motion for rehearing to raise those issues ignored by counsel.  As already noted by this Court, petitioner fails to establish that

the omission of a viable claim on appeal caused him prejudice, and his conclusory allegations of omitted viable errors on appeal are insufficient to raise a material issue of fact precluding summary judgement.   Petitioner again shows neither deficient performance nor prejudice.

*Petition for discretionary review*

Petitioner complains that counsel filed a petition for discretionary review without his consent.  In responding to the grievance petitioner filed against him with the State Bar of Texas, appellate counsel admitted that, although he was not required or ordered to do so, he filed a petition for discretionary review on petitioner's behalf because

> I really do not think he had a fair trial, his attitude and demeanor aside, but unfortunately it was denied.  Since [petitioner] was in direct contact with the Court of Criminal Appeals in Austin, and since he did not want my help as attorney and was asking that my brief be struck so that [he] could file his own I did not send him a copy of the PDR[.]

*Ex parte Cormier*, p. 85.

While this Court cannot condone an attorney's gratuitous (and undisclosed) filing of a pleading on behalf of a party who had unequivocally rejected the attorney's services, it cannot use such a filing as a reason to set aside petitioner's conviction in the instant case. A defendant has no constitutional right to the effective assistance of counsel on a petition for discretionary review, and consequently, may not complain of the ineffective assistance of such counsel as grounds for federal habeas relief.  *See Moore v. Cockrell*, 313 F.3d 880, 882 (5th Cir. 2002) (holding that a petitioner's constitutional right to counsel on appeal ends

when the appellate court affirms his conviction).  Even assuming counsel was deficient, petitioner shows no prejudice under *Strickland*.

The state habeas courts denied relief on these issues.  Petitioner fails to show that the state court's determinations were contrary to or involved an unreasonable application of *Strickland*, or were unreasonable determinations of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on these issues.

## XVII.  Conclusion

Respondent's motion for summary judgment (Docket Entry No. 31) is GRANTED. The petition for a writ of habeas corpus is DENIED, and this case is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED.  Any and all pending motions are DENIED as moot.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas on March 9, 2007.

_____
Gray H. Miller
United States District Judge